**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **THOMAS J. W.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:25-CV-00005-CDL** |
| | ) | |
| **FRANK BISIGNANO,**[1] | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c). For the reasons set forth below, the Court **reverses** the Commissioner's decision and **remands** the case for further proceedings.

## I. Standard of Review

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by

[1] Effective May 7, 2025, pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 587 U.S. at 99 (quoting 42 U.S.C. § 405(g)). Thus, the Court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II. Background and Procedural History

Plaintiff filed an application for supplemental security income (SSI) benefits on March 29, 2023, alleging a disability onset date of January 1, 2023. R. 52. Plaintiff alleged disability due to a combination of mental and physical impairments, including hidradenitis suppurativa, depression, anxiety, and post-traumatic stress disorder. *Id*. Plaintiff was 40

years old on the alleged onset date. He has an 11th-grade education and earned a GED. Plaintiff testified that he babysits his sister's two children in exchange for room and board. R. 38-40. Otherwise, he had not worked in two or three years. R. 38.

The Commissioner denied Plaintiff's application on initial review and on reconsideration. After Plaintiff requested a hearing before an Administrative Law Judge (ALJ), a telephonic hearing was held on July 1, 2024. Plaintiff was represented by an attorney representative, and testimony was given by Plaintiff and a Vocational Expert (VE). *See* R. 34-63.

On July 19, 2024, the ALJ issued a decision denying benefits. R. 15-31. On November 4, 2024, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the agency's final decision. R. 1-4. Plaintiff filed a timely appeal in this Court after receiving an extension. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's July 19, 2024 decision under 42 U.S.C. § 405(g).

## III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)

(internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant has the residual functional capacity (RFC) to perform other work available in the national economy, considering the claimant's age, education, and work experience. *Id*.

Here, at step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of March 29, 2023. R. 17. At step two, the ALJ determined that the plaintiff has severe impairments, including PTSD, depression, hidradenitis suppurative (a skin condition causing breakouts in boils and cysts), and morbid obesity. *Id*. The ALJ determined that Plaintiff's obstructive sleep apnea is non-severe, noting Plaintiff's report that using a breathing machine had improved his sleep and made "a huge difference in his thinking and all of his conditions." R. 18.

At step three, the ALJ found that plaintiff's impairments do not meet or equal the severity criteria for any Listing, specifically addressing Listing 8.09, concerning chronic conditions of the skin or mucous membranes. He concluded that Listing 8.09 was not satisfied "because there is no documentation in the file of [sic] that this impairment limited the claimant's ability to use his upper extremities in any capacity to complete work-related activities involving fine and gross movements due to chronic lesions or contractures." *Id*.

The ALJ also considered the plaintiff's mental impairments using the "paragraph B" criteria—the four areas of mental functioning listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that the plaintiff has a mild limitation understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. R. 18-19. Because the plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the paragraph B criteria were not satisfied.

At step four, after considering the entire record, the ALJ determined that plaintiff has the RFC:

> to perform light work as defined in 20 CFR 416.967(b) except the claimant is able to lift or carry, push, or pull up to twenty pounds occasionally and up to ten pounds frequently. The claimant can sit for six hours out of an eight-hour day and stand or walk a combined total of six hours out of an eight-hour day. The claimant can understand, recall, and perform simple tasks and detailed tasks but not complex tasks, and he can make occasional related judgments. The claimant can attend to and complete more than basic tasks including tasks that require some (occasional) skills and judgment but that do not require doing complex work duties. The claimant can concentrate and focus for two-hour periods with routine breaks and pace and persist for an eight-hour workday and forty-hour work week. Due to periodic interference from psychological symptoms, the claimant will have difficulty maintaining concentration for complex tasks. The claimant can interact with coworkers and supervisors to learn tasks and accept criticism but can only tolerate public contact that is no more than incidental (in nature) and occasional (in frequency). The claimant can adapt to a work setting and some (occasional) changes in work settings.

R. 20. The ALJ indicated that, in making this finding, he considered all of Plaintiff's symptoms in connection with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and Social Security Ruling (SSR) 16-3p, as well as medical opinions, prior administrative findings, and "all evidence in the record," in accordance with the requirements of 20 C.F.R. § 416.920c. *Id*.

The ALJ concluded at step four that Plaintiff has no past relevant work. R. 25. However, at step five the ALJ determined that Plaintiff can adjust to work existing in significant numbers in the national economy, given his age, education, work experience, and RFC. *Id*. The ALJ cited the VE's testimony that, with the RFC identified at step four, an individual with those characteristics could perform the requirements of representative occupations, including:

> ***Marker/Tagger***, light exertion, unskilled, specific vocational preparation (SVP) level 2, DOT # 209.587-034, with approximately 60,000 such jobs in the national economy;
>
> ***Cleaner***, light exertion, unskilled, SVP level 2, DOT # 323.687-014, with approximately 132,000 such jobs in the national economy; and
>
> ***Office helper***, light exertion, unskilled, SVP level 2, DOT # 239.567-010, with approximately 101,000 such jobs in the national economy.

*Id*. Accordingly, the ALJ concluded at step five that Plaintiff is not disabled.

## IV. Discussion

Plaintiff contends that the ALJ failed to perform a proper analysis of Plaintiff's subjective statements as to the symptoms of hidradenitis suppurativa, and that substantial evidence does not support the RFC determination. The Commissioner argues that the ALJ

applied the proper legal standard in evaluating Plaintiff's RFC and subjective statements, and that substantial evidence supports the decision.

In assessing a claimant's complaints of pain and other symptoms, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary*, 695 F.3d at 1166-67 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[2] In evaluating pain, the Commissioner considers factors including the claimant's daily activities; frequency and intensity of pain or other symptoms, precipitating and aggravating factors, and the effectiveness of treatment. *See* 20 C.F.R. § 416.929(c).

Under agency regulations, the ALJ's decision must give "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." SSR 16-3p. Courts "will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (internal citation omitted).

---

[2] While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna* and *Keyes-Zachary*. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value.").

Plaintiff testified that his hidradenitis causes “huge” boils and cysts “often and all over, like between [his] legs, [his] armpits,” and his neck and face. R. 41-42. He stated that the lesions make it “very painful” to move, R. 41, and limit his functioning, in that

> if I get one on my armpit, I can’t move that arm. And, if I get one where the leg meets the, excuse my term, but butt cheek, it’s hard to walk. Or, if I get one, in my -- between my legs, on my genitals, which I do get them on my genitals, it’s very difficult to walk or sit or stand.

R. 44. Plaintiff indicated that such outbreaks occur about once every three weeks and last several days. R. 44-45. The boils

> swell up with pus[] and then they drain and that usually takes a few days to get to where I can, you know, move around normally without a minimal amount of pain, you know.

R. 42. During an outbreak, “wearing normal clothing is not an option for [Plaintiff]” because clothing rubs against the lesions. R. 45. The boils sometimes become infected, and they cause “a horrible smell” that is “embarrassing.” R. 41. After the boils drain, they cause scarring, which Plaintiff has “from head to toe.” *Id.*

Plaintiff testified that when he has worked in the past, he had to call out sick or leave work early excessively, making it “hard to maintain a position anywhere.” *Id.* To avoid losing a job, he would sometimes “show up” despite having an outbreak, but would ultimately find that he “couldn’t . . . help nobody[,]” and the employer “would end up sending [him] home early or [Plaintiff] would just call out because [he] didn’t want to deal with it.” R. 46. Plaintiff has “lost every job because of it,” and returning to work seems “impossible . . . because it hurts so much emotionally and physically.” R. 41-42.

Plaintiff explained that the flare-ups are worse in the summer because they are triggered by sweating. R. 42. Plaintiff stated that,

> I've been dealing with this since I was 15. And, I just, you know, always tucked it through, but you can only do that for so many years until you give up. And, I've given up. . . . The more active I am, the more [] I break out. So, I just don't do anything. The less I do, the better. . . But, I still break out. I still have them. It makes life very difficult for me.

R. 43-44.

The ALJ found that, while Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms[] . . . [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 21. The ALJ summarized portions of the medical evidence, including treatment records between January 2023 and June 2023, a physical consultative examination with Subramaniam Krishnamurthi, M.D. in August 2023, and mental health treatment records. R. 21-22.

Specifically, the ALJ's decision explained that,

> [a]s for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the evidence of record does not support the alleged severity of the claimant's impairments. The claimant alleges inability to work due to break outs of HS; however, treatment notes from an office visit in January 2023, document the claimant reported his psoriasis was clearing up on his legs and he was finally "starting to look normal again." Additionally, dermatology notes document that the claimant's symptoms were managed with medication and as of June 2023, and[sic] he had not experienced any new outbreaks. This evidence supports the finding that the claimant can perform light work.

R. 23. Additionally, the ALJ adopted the findings of state agency medical consultants, who found initially and on reconsideration that Plaintiff can perform light work. R. 23. The ALJ determined that these assessments were persuasive, noting that

> the claimant was on Humira and was tolerating it well with no recent outbreaks as of June 2023. The claimant also testified that he underwent injections of Humira that did nothing. However, dermatology records note that there were no recent outbreaks, and the claimant was tolerating his medication well. The claimant testified he has gone untreated over the past year and has not been back to see a dermatologist. He complains of pains with walking and moving him[sic] arms; yet Mind Spa records indicate providers recommended the claimant exercise regularly for 30 minutes a day 4 to 5 days a week.

R. 23 (internal citations omitted). The decision also discussed Dr. Krishnamurthi's consultative examination report as follows:

> [T]he claimant presented with complaints of residuals from Hidradenitis Suppurativa (HS). During the initial interview the claimant reported a skin infection over most of his body. This included the armpits, chest, abdomen, face, scalp, and arms. Some of the lesions were irritated. The infection starts as a boil that got bigger and burst. Then, he had to clean them up and keep them clean to avoid infection. Each episode lasts about 3 days and occurred once every 2 weeks. If he remained active outside the boils occurred more often. The claimant did not believe he was able to hold down a job because of the boils and cysts which occurred from HS. He believed he could walk a ½ block, stand for 15 minutes, he had no problem sitting and could lift about 100 pounds. During a physical exam he complained of muscle and joint pain. Examination of the skin revealed infections due to HS as mentioned above. The claimant reports he smokes one pack of cigarettes daily. The orthopedic portion of the examination was normal. A review of vital signs revealed the claimant weight at 341 pounds, he stood 6 feet tall with a blood pressure of 157/97. Range of motion in all areas were within normal limits. The claimant was diagnosed with HS and morbid obesity.

R. 22 (internal citation omitted). Although Dr. Krishnamurthi did not give an opinion regarding the maximum physical work activities Plaintiff can perform, the ALJ found Dr. Krishnamurthi's "examination . . . consistent with the above light residual functional capacity." *Id*.

Plaintiff argues that the ALJ mischaracterized some of this evidence and improperly cherry-picked unfavorable evidence, while ignoring substantial evidence that supports Plaintiff's subjective complaints. Defendant argues that the ALJ's decision adequately supported the conclusion that the overall "evidence of record does not support the alleged severity of [Plaintiff's] impairments." R. 23.

In discounting Plaintiff's statements about the severity of his symptoms, the ALJ's noted a reported episode of psoriasis in January 2023 that cleared up with treatment. However, the record indicates that Plaintiff's psoriasis was a temporary condition that resolved with treatment. There is no indication in the provider's notes that Plaintiff's HS cleared up at that time. Rather, the provider referred Plaintiff to a specialist for further assessment of his HS. Thus, the reference to Plaintiff's legs "starting to look normal again" is not probative of whether Plaintiff's HS prevented him from working, as the ALJ's decision suggested. R. 23; *see* R. 296.

The ALJ also appears to have misconstrued Plaintiff's dermatologic treatment records in April and June of 2023. On April 17, 2023, Plaintiff reported that he had started taking Humira, with no side effects, and was doing well with treatment. R. 324. Although provider's notes indicate that Plaintiff was "tolerating [H]umira well" and reported "no recent outbreaks," R. 324-325, the provider also observed HS lesions on more than a dozen

body parts, including multiple extremities and parts of the torso; "weeping acneiform pustules and papules and fistula formation and draining sinuses located on the body throughout"; and "acneiform abscesses, draining sinuses, and nodules." R. 324. The impression noted was "Not At Treatment Goal." R. 325. Plaintiff's HS was rated at Hurley Stage III, indicating "multiple interconnected sinus tracts and abscesses throughout an entire area." *Id*. Plaintiff was directed to continue treatment with Humira and to use certain cleansers.

On June 26, 2023, Plaintiff reported that his symptoms had worsened since his previous visit. R. 336. He reported that he had symptoms with changes in weather, particularly heat, and that he had been without power, which "made him flare up even worse." *Id*. After physical examination, the provider noted HS on the same areas of the body identified at the previous examination, as well as weeping acneiform pustules and papules, fistula formation, and draining sinuses "located on the body throughout." *Id*. The provider assessed Plaintiff's HS to be "[w]orsening." R. 337. Plaintiff was advised to continue Humira treatment and to begin a 10-day treatment with antibiotics. R. 337.

The ALJ's decision cited the April 17, 2023 and June 26, 2023 visit notes from Southside Dermatology for the proposition that Plaintiff had "no recent outbreaks" on those occasions. However, the decision did not address other significant findings from the same visit, including HS lesions throughout the body observed on the April and June visits, and the notes indicating in June that Plaintiff's condition was "worsening" and addition of an antibiotic treatment. Accordingly, the ALJ's discussion of Plaintiff's dermatology treatment records is not simply a resolution of "conflicting medical evidence," as

Defendant suggests—rather, this portion of the ALJ's discussion is not "consistent with and supported by" the evidence cited. SSR 16-3p.

The ALJ's decision notes other reasons for discounting Plaintiff's subjective complaints, such as Plaintiff's failure to seek further treatment in the year since his June 2023 appointment. R. 23. However, it is well-established that, before an ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his consistency determination, the ALJ should consider factors including the reasons for not seeking treatment. Here, although not noted in the ALJ's decision, Plaintiff testified that he "lost the insurance so I haven't been able to go back and get any more of these injections. They're like $13,000 a pop, you know." R. 43. There is no indication that the ALJ considered whether excessive cost "may provide[] an alternative explanation, other than lack of a severe impairment, for [the claimant's] failure to obtain treatment." *Lee v. Barnhart*, 117 F. App'x 674, 2004 WL 2810224, at *6 (10th Cir. 2004) (unpublished).

Defendant argues that the medical records lack evidence that Plaintiff's HS causes functional limitations. (Doc. 16 at 7). *See Paulsen v. Colvin*, 665 F. App' x 660, 668 (10th Cir. 2016) ("Diagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations."). The Commissioner may consider the extent to which a claimant's symptoms can be "accepted as consistent with the objective and other evidence." *Id.* § 416.929(a), (c)(3). However, the regulations provided that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms

have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529.

Notably, the ALJ also ignored or summarily discounted other subjective evidence corroborating aspects of Plaintiff's testimony. In a function report, Plaintiff reported that inflammation occurs "often," with "excruciatingly painful," large boils and/or cysts on his neck, armpits, back, and groin. R. 202. Plaintiff further explained that due to his symptoms, he "cannot wear normal clothes required by most employers," and stated he had "lost every job [he has] ever had" because of HS symptoms. *Id*. A third-party statement submitted by Plaintiff's former employer described having hired Plaintiff in three different food service locations, noting Plaintiff "would typically work through the pain till he could not take the pain any longer," then would "call into work and miss days if not weeks," and acknowledging Plaintiff "cannot physically carry on doing the work due to the pain he was in." R. 255. Although the ALJ dismissed the third-party statement as "inconsistent with the evidence of record," that statement appears fully consistent with Plaintiff's subjective reports to his providers and his testimony about how his condition impacted his ability to work. *See* R. 24. The vocational expert testified that a hypothetical individual's need to miss work two or more days per month, on a recurring basis, would be work-preclusive. R. 48. Thus, the ALJ's discussion failed to adequately address the record evidence in discounting Plaintiff's subjective complaints.

For the reasons explained herein, the ALJ's decision did not adequately explain why he discounted Plaintiff's complaints regarding limitations from his physical impairments. Remand is therefore necessary for further consideration of the record as to Plaintiff's

physical RFC and, as appropriate, an explanation sufficient to enable meaningful review of the ALJ's reasoning in light of the record as a whole.

## V. Conclusion

For the reasons set forth above, the Court finds the ALJ's decision did not satisfy all applicable legal standards in finding Plaintiff is not disabled. Therefore, the decision of the Commissioner finding Plaintiff not disabled is **reversed and remanded** for further proceedings consistent with this opinion.

**SO ORDERED** this 30th day of September, 2026.

Christine D. Little
United States Magistrate Judge